Our next case is Labriola v. Miami-Dade County. We'll hear first from Mr. Bumbo. Good morning and may it please the court. My name is Alexander Bumbo for the appellant John Labriola. Today I will try to make two arguments. The first being that this court should consider the overbreath challenge to I-07-45 and the second being that I-07-45 is unconstitutionally overbroad. My first point, the court should consider the challenge to I-07-45. The county argues that it shouldn't because in the disciplinary action report in which Chairman Diaz suspended Mr. Labriola and ordered him to undergo additional training, he listed in I-07-45 and two other reasons for the actions taken in the DAR. However, this court should still consider that challenge for three reasons. The first being that the other two reasons given in the DAR are dealt with in the Pickering conic test. The other two reasons are that Labriola allegedly made several inflammatory statements that were offensive to the community we serve and publishing insulting language that attacks people based on gender identity and sexual orientation is inconsistent with your position as a media aide. Those two reasons are dealt with in the Pickering conic test. If the county wants to defend anything in the disciplinary action report, it must successfully defend I-07-45 from the overbreath challenge. Can I ask you maybe a threshold question? I may just be misunderstanding here, but I guess I thought, for better or worse, that one of the benefits of bringing an overbreath challenge is that it's by its nature a facial challenge and so sort of whatever the effect was on his own disciplinary proceeding here is kind of neither here nor there. That may be crazy, but that's the doctrine that the Supreme Court has handed us. Am I wrong about that? Well, the county says that this court should not consider the overbreath challenge because in the disciplinary action report, Chairman Diaz listed I-07-45 plus in the county's words two other reasons for taking the action against Mr. Labriola. I guess the reason I'm asking is that that sounds like a defense to an as-applied claim to me. It kind of didn't matter here, but I guess I had thought, and again I could be wrong about this, the county may tell me I'm dead wrong about this, that when a plaintiff brings an overbreath challenge, for better or worse, he kind of has the benefit of saying, like me, you know, maybe it affected me, maybe it didn't, but it affected lots of people. Well, I think that's a question for the county to answer. I guess I'm asking, is that your position? Because what I thought you would have said is, you know, one reason you should consider this overbreath claim is because overbreath is a special thing, and whether it affected his sort of discipline or not, he gets to bring it, it's sort of a private attorney general kind of thing or whatever, and again, that may be crazy, but I guess I would have thought that perhaps if I was right about that, that might have been your first line and then your second line might have been, in any event, it kind of did affect his discipline. So I guess I'm just wondering, is that your position? Well, I do believe that overbreath is a special thing, yes, and Mr. Labriola can, it is a into a county argument in their brief, may I get back to my argument? Sure. All right, so the second reason why this court should consider the overbreath challenge is that this court's decision in Crawford v. City of Fairburn, which the county relies on for its argument, is distinguishable. In Crawford, a manager within a police department lost his Title VII retaliation case, despite the fact that he showed that he had reported inappropriate conduct by his supervisor, because he did not even attempt to rebut the other reasons that the city gave for firing him, namely that his performance was deficient in several areas. He did not even attempt to rebut the other reasons the city gave for firing him. By contrast here, Labriola rebuts all the county's reasons in the disciplinary action report. He rebuts the I-07-45 reason with the overbreath challenge, and he rebuts the other two reasons in the Pickering-Connick test. And so Crawford is distinguishable. The final reason why this court should consider the overbreath challenge is that the district court ruled on the overbreath issue, and if the district court's overbreath analysis is wrong, as I contend it is, then it should not be allowed to stand as precedent for use in future cases, and Miami-Dade County employees should not continue to be forced to work under the unconstitutional I-07-45. One of the things we consider when we are evaluating an overbreath challenge is whether the policy we're looking at requires a mens rea repetition or that the putative victim's response be reasonable. And for example, in Doe, we held that a college's stalking policy was not overbroad because it only applied to conduct that was willful, malicious, and repeated and directed at a specific person and that serves no legitimate purpose. And I wonder, how does that shake out here when we look at the policy at issue here? That was actually my second point, is that I-07-45 is unconstitutionally overbroad. I detail that a lot in my briefs, but I want to focus on the Doe point today. I think the district court's comparison of this case to Doe was faulty. And like Judge Rosenbaum said, I mean, in Doe, I'm just going to recap, in Doe, the court upheld against an overbreath challenge a provision of Valencia College's Code of Conduct which defined, quote, stalking, and I'm going to reiterate that it defines stalking as, quote, behavior in which an individual willfully, maliciously, and repeatedly engages in a knowing course of conduct directed at a specific person which reasonably and seriously alarms, torments, or terrorizes the person and which serves no legitimate purpose. And Judge Rosenbaum pointed that out. She said, look, well, this court upheld that provision for a few reasons. Number one, as Judge Rosenbaum pointed out, was that that provision did not prohibit all conduct that alarms, torments, or terrorizes. It prohibited only conduct which is also, quote, willful, malicious, and repeated, which is a scienter requirement and is directed at a specific person and serves no legitimate purpose and which causes a reaction that is beyond a purely subjective or minimal threshold of harm. By contrast, IO 7-45 does not have any of those limitations. But is that really accurate? I mean, IO 7-45 applies only to, quote, inappropriate postings, including harassment or similar inappropriate or unlawful conduct. And then it goes on to define harassment as unwelcome verbal or physical conduct that demeans stereotypes or shows hostility to a person or group because of the individual's protected conduct, including gender identity, gender expression, and sexual orientation. If that conduct has the purpose or effect of creating an intimidating, hostile, humiliating, or offensive work environment, has the purpose or effect of unreasonably interfering with a person's work performance, or otherwise adversely affects a person's employment opportunities, which we can ascertain whether it adversely affects a person's employment opportunities by looking to the definition of an adverse action in our circuit. Well, I would say that, Judge Rosenbaum, I would say that the definitions that you mentioned or the text that you mentioned from IO 7-45 is much broader in its scope than the Valencia College's Code of Conduct in Doe. And as I write in the briefs, there's also language of, has the effect of. So in other words, it doesn't just prohibit certain stated conduct, it also states that it has the effect of. But it says the effect of unreasonably interfering. It doesn't say has the effect of interfering. It says unreasonably interfering with a person's work performance. And so, I mean, it seems as though putting in the unreasonably qualifier there, especially in light of what comes before the has the effect of, significantly narrows what it is that is prohibited. Why isn't that the case? Well, I would say that's not, that isn't the case. And I know that I addressed it in my briefs, but it doesn't come up to my mind right now. So I would say, as much as I would like to answer your question right now, I would say that I'd have to submit it to my briefs. Also, I would like to point out that the intent of I07-45 and the fact that it covers people who are not county employees at events like county business parties and county holiday parties, that also really explodes the scope of I07-45. So I see that my time has run out. Are there any further questions from the panel? I've got one. Yes, Your Honor. It was interesting, you began your argument with overbreath rather than, more generally, rather than whether this regulation or policy constitutionally was applied to your client in particular. The Supreme Court has told us, among other things, in their many discussions of overbreath in the free speech and expression area, that the idea of using overbreath, the doctrine itself should be applied sparingly and only as a last resort. Repeatedly, they have said, this is really strong medicine. And I made an effort to go through every single Supreme Court case I could find on overbreath. The most recent statement, the case called U.S. v. Hansen, Justice Barrett speaking for the court says the following, because it, referring to overbreath, destroys some good along with a bad, invalidation for overbreath is strong medicine that is not to be casually employed. To justify facial invalidation, a law's unconstitutional application must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. Does not this policy have substantial lawful sweep, at least in some contexts? You can't say the whole thing goes down for void for overbreath, can you? I do believe we can. You think the whole thing goes down? Well, at least the provisions that are at issue here. So that would be the ones that I mentioned in my brief. If you walked in here and you said, well, Judge Marcus, look at the provision dealing with what they characterize as awful harassment, it's inappropriate behavior outside the scope of anti-discrimination laws, falls short of the violation of the policy, but it's unwelcome and offensive, blah, blah, blah, I think you'd have a pretty good argument that there may be some overbreath lurking in that language. But I'm not sure you can fairly say that the whole kit and caboodle is overbroad. Is that your position? Let me clarify. The entire policy here is overbroad, I-07-45, and therefore, First Amendment jurisprudence compels us to reach out for it, even if the county had a proper basis to sanction your client. Thank you for your question, Judge Marcus. Two points in response. First, I do want to clarify that we're only challenging the provisions of I-07-45 for awful, what is it called, there's unlawful harassment, awful harassment, and the social media policy, because those are the only ones that arguably apply to- Right. By the way, it's interesting. I take it Diaz did not cite any particular provision. He did not, Your Honor. So we don't even know what they were traveling on. They offered three reasons, the policy in general, and two other reasons, right? Yes, but they did not specify which provision of I-07-45 they were citing my client under.  And so if you read through I-07-45, there are only three provisions of it that could realistically be applied to my client. The social media policy, the provision on unlawful harassment, and the provision on sexual harassment. So it's, to be clear, the overbreath challenge is limited to those provisions, but I do think that the intent of I-07-45, which you see at the beginning of the policy, infects those provisions as well. And my second point in response to Judge Marcus, you mentioned that overbreath is a strong medicine to be applied sparingly. The Supreme Court has had that language for 50 years, since its decision in Broderick v. Oklahoma in 1973. But that did not prevent this court in O'Loughlin v. Palm Beach County from striking down as unconstitutionally overbroad a very similar public employment policy. And so I argue in my briefs why this case, why I-07, the provisions of I-07-45 are unconstitutionally overbroad like that policy. Let me ask you again, going back to the most recent quote that I just gave that I read from Hansen, have you established on this record the substantial number of unlawful applications found in this statute, in this reg? Even if you could argue that maybe at some end there would be an unlawful application, you've got to show that that's really a substantial problem, don't you? Yes, I think I have, Your Honor, because- And you agree you have to show that? I agree that I have to show that the provisions of I-07-45 cover- The number must be substantially disproportionate to the statute's lawful sweep. That is unambiguously the law. It has been the law for a long time. My question is a simple one. Have you established a substantial disproportionality to the statute's lawful sweep? Yes, I have, Your Honor, and for that I would refer to my briefs. Okay, thank you. All right. Thank you very much. You've reserved five minutes. We brought you over by a little over six minutes, so I'm going to give Mr. Candela an extra six minutes as well. Good morning. May it please the court, Bill Candela, Assistant County Attorney on behalf of Miami-Dade County. Mr. Labriola referred to homosexuals as pedophiles and transgender individuals as child molesting trannies in an article that he published in an online publication that he attached his name and his picture to. These are- I want to ask you a favor, I guess, really. I think your adversary has made a wise strategic judgment to focus on overbreath. Speaking for myself, I think the other claims fail. I think overbreath is close. So would you maybe begin with overbreath, and maybe, if you don't mind, begin, if you want to, by setting me straight about my understanding of how overbreath works. I mean, I guess my impression has been that overbreath is this unique animal, this unicorn in the law, where someone like the challenger in this case can say, in effect, although he doesn't really, but he could say, yeah, look, maybe it was applied to me, maybe it wasn't. But in any event, here I am, and the policy is overbroad. My response to that is that it's not a theoretical position, is that if you look at the entire the county's anti-discrimination policy, I-074, there's two problems before we even get to that question. So the first problem that he has is that he was disciplined for two reasons other than the fact, and then I-0745, which is listed in the disciplinary action report. So he, in the first page of this disciplinary action report, you see that he is cited for violating the county's personnel rules for conduct unbecoming of a county employee. In support of that violation, when you turn to the second page of the DAR, there are two other reasons that we outline in our brief that explain why he's being found to have committed conduct unbecoming of a county employee, and those are that he made inflammatory and insulting statements that are offensive to the community that we serve. And then the second one is that he published insulting language that attacks people based on gender identity and sexual orientation. So if you have two reasons besides the anti-discrimination policy, you do not have to reach the anti-discrimination policy. The second, and I think even more fatal problem, is that he doesn't identify which part of the 10 pages, because the county's anti-discrimination policy is 10 pages long, and the plaintiff, Commissioner Diaz, doesn't identify it. More importantly, the plaintiff doesn't identify which paragraph he is attacking, what Commissioner Diaz relied on in that 10-page anti-discrimination policy. So if you can't identify which paragraph or paragraphs you are traveling under in an overbreath challenge, we're left to speculate. It's impossible. But is that his fault, or is that the fault of the commissioner for not having actually cited the specific provision under which he was acting? That's the fault of the plaintiff, and the plaintiff had every opportunity to ask Commissioner Diaz that when he took his deposition. He took his deposition, and he didn't tackle that initial issue in any overbreath challenge, which is, what section are you talking about? So for example, in the O'Loughlin case, in that case, it was clear that they were traveled, that they disciplined these, I believe, two captains from the fire department under the social media policy. That's why those two captains received a written reprimand. That was clear. It's not clear here at all what section Commissioner Diaz was relying on in citing that in the disciplinary action report. So those are two reasons that are fatal to his overbreath challenge, because it, A, relies on speculation, and B, you do not have to necessarily tackle that. And I think Judge Marcus made that absolutely clear about the strong medicine, and if we don't have to reach that issue, which we shouldn't in this case, if there's a case that calls for not reaching it, it would be this case. So let me ask you this, slightly different case, but as I recall, I wrote it, I think Judge Marcus was on the panel with me, the Speech First case involving Campus Speech Codes. Are you familiar with Speech First versus Cartwright? It's a Campus Speech Code case involving UCF, I think. Does this ring a bell with you? It's an overbreath case. This is not a quiz show, so I don't mean to put you on the spot. So in that case, you know what these Campus Speech Code cases are, right? It's a vaguely written policy that threatens discipline for harassing speech. And this court invalidates that speech code on overbreath grounds, in part, because it reaches verbal conduct, physical conduct, electronic conduct that sort of encompasses core political speech. Offensive, maybe, but core political speech. This policy seems to track pretty closely to policy at issue in Speech First. And in that case, my recollection anyway, vague, is that it might be that students weren't even disciplined under the policy, but they were subject to the policy. And we said, look, those students have standing to challenge the policy, their protected expression is chilled, and therefore, they can bring the overbreath claim, we address the overbreath claim, and the thing is overbroad. Why is that all that different from this case? So I believe that the district court referred to that, and my understanding of these overbreath cases is that you have to apply them also, if we were to apply it here, I've made the argument that we shouldn't, but if we were to apply it here, theoretically, you have to look at what the individual said. So it has to apply to the facts at issue. I think that's a- I guess this is my question. I have always, again, for better or worse, been under the impression that an overbreath claim is by definition a facial challenge. It is not an as-applied challenge. Now, I recognize in the briefing, the challenger here said, I've got a facial overbreath claim and an as-applied overbreath claim. Frankly, I don't think an as-applied overbreath claim exists. I think it's by definition a facial claim. So I guess I'm not, maybe I should be, but I'm not yet persuaded that it's a sufficient answer to say, as applied here, it's not overbroad. I think that sort of like mixes terminology or something. Does that make sense? Yes, I understand what you're saying. I guess my question about speech first is, if we're willing to say that someone who hasn't even yet been subject to disciplinary policy, to an overbroad, allegedly overbroad disciplinary policy, can bring an overbreath challenge that we will hear and adjudicate. And in that case, invalidate. Why not here? And I think I need to circle back to the fatal flaw in their position that they don't identify any particular part of the 10-page administrative policy. So, for example, if we were, if- Let me stop you right at that point. Let's look at the policy itself. I read from awful harassment. That's part of the rules. Unlawful harassment comes first. That's page two. And then they speak of lawful harassment. And it's defined as inappropriate behavior that's outside the scope of anti-discrimination laws. It falls short of a violation of the policy. The conduct, though unwelcome and offensive, is unrelated to any protected class. Of course, that's not what we have in this case. I understand that. But I'm just talking, again, if we were untethering his challenge from what actually happened in this case. And that's really the issue that Judge Newsom is going to. If we untether it completely, what we have here includes, but it's not limited to, an occasional unwelcome compliment, a questionable joke, limited bullying, nonviolent threats, the use of profanity and insults unrelated to any protected class. The county may take necessary corrective or remedial action to address these things. It strikes me as pretty broad if I actually was just looking at that thing. And he says we ought to be looking at that. And if we do look at that, the bottom line is that meets any test of overbreath, at least facially. What am I missing? Why isn't that on its face overbroad? And if that's all she wrote, why oughtn't we say that? Because, well, I thought he conceded that he wasn't traveling, that he wasn't attacking all entire pages. No, but he sure was going to attack awful harassment. OK, and if Commissioner Diaz was citing the awful harassment paragraph, this would be a completely different case. OK, suppose they did. And we don't know what Diaz was citing because he cites nothing. He just tells us generally it's the statute. So if we did, then I would I would emphasize that we need not embark on that theoretical analysis because he was disciplined for two other reasons. And that's why we should avoid. And that's exactly I think that's why those Supreme Court cases say what they say, because within these 10 pages, I believe they are valid provisions here, which is our stand. This is our standard anti-discrimination policy. And I know they went a little far when they're talking about unlawful harassment, right, or unlawful harassment or lawful harassment. In any event, there are other provisions here which would withstand a overbreath challenge. I submit, for example, when you look at our personal use media, that two paragraph. What page are you on? And that's page 140. And that would be in the policy itself. I've got right in the policy. That would be page six, page six in the policy. Personal use of social media. That's the word I'm referring to. And I submit that that that one in particular and the district court agreed that those have discrete examples of conduct that is prohibited and would withstand an overbreath challenge. So the cases, including Doe versus Valencia, say, well, if there's any provision in the policy, which was upheld in Doe versus Valencia, that would withstand an overbreath policy, an overbreath attack, then then the policy itself would withstand an overbreath attack. Right. We are told by the Supreme Court that we are supposed to look at whether to justify facial invalidation, a law's unconstitutional application must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. So let's assume, arguendo, that what you cited on page six falls within a lawful sweep. And I haven't heard him say it does not. Does the policy dealing with awful harassment fall without lawful sweep? Does that not go too far? That that may. That does have some language, which is rather loose, undoubtedly. But we don't know. We might have a void for vagueness problem too, but that's not alleged here. Right. But and I know I've said this, I've said this, but I just want to harp on the fact that we don't know. There's no reason to look at that particular language that you pointed out, because we don't know if that's the language which is the crux of the anti-discrimination policy that was mentioned by. So if you're a decision maker in the county, why ever cite to anything in particular? Why not just say you violated the policy? You could do that and there's nothing wrong. And we're not going to tell you which provision of the policy, because we know there are some prisons provisions that are facially overbroad and violate the First Amendment. And maybe there are other provisions in there that are not facially overbroad and do not violate it. And we don't want to get into a debate about what facial overbreath means in this unicorn, as Judge Newsome described it. So we're going to leave it open ended. Right. There's understand the problem. That's all you ever have to say is the decision maker. And by your account, we'd never get to the issue of overbreath. Well, isn't that right? Yes. Yes, that a commissioner and the chairman doesn't have to cite a provision, a particular provision of the I-0745. But what should happen, right, and which would let us get right down to the crux is that the plaintiff, that's their burden. The plaintiff needs to, when they ask Commissioner Diaz, who signed off on this, it was a three day suspension. And then the order, when he asked him about the disciplinary action report says, I see that you cited I-0745, what provision are you traveling under? It's a 10 page document. They didn't do that. That's their burden. They didn't do that. And because they didn't meet their burden, the court need not undertake this particular issue and examine every page of this 10 page document. So that's why we're in the position that we're in. Does I-0747 prohibit awful harassment? I'm just, I'm a little confused because it clearly prohibits unlawful harassment. Does it prohibit awful harassment as well? It provides at the third page that awful harassment is inappropriate behavior that is outside the scope of anti-discrimination laws and falls short of a violation of this policy. So it's saying it doesn't prohibit it. That's correct. Well, help me with that. I read to you what the awful harassment said. And then the next paragraph that follows it says, quote, the county may take necessary corrective or remedial action to appropriately address any workplace inappropriate conduct, even if it does not constitute a violation of this policy. And then it has distinctions between harassment and legitimate management action. Is it clear just to go really back to Judge Rosenbaum's question, can somebody be canned for awful harassment by the county? That is to say, they make a questionable joke.  They saw Jimmy Kimmel last night and he said something that was funny and it was questionable and they repeated it. Might fall into awful harassment. Can the county under this section fire somebody for that or sanction them and say, you got to go watch our little program on TV? So when I read pages three and four, the awful harassment, and then you turn to the next page. Yes, it is inartfully drafted, undoubtedly. Tell me what it means. And you represent the county. I represent the county. You give them advice. Give me advice. Tell me what this means that your county has drafted. When I look at the plain reading of these words, it does say that the county may take necessary corrective or remedial action to to address any workplace inappropriate conduct. And that means I raise it is because it comes right on the heels of awful harassment. The way I read it is if I was an employee of the of the county, I might think they could take corrective action, remedial action and sanction me violating the awful harassment provision. Right, right. That would not be an unfair reading, would it? No, your honor. That would that would not be an unfair reading. And I think the point is that there there are there's certain conduct that doesn't reach Title seven discriminatory conduct, which would notwithstanding be grounds to give an employee a record of counseling or something to that effect. I think that's what that is trying to capture there. So and I do understand that it is in our inartfully drafted. But can I can I ask you a follow up question about sort of the nature of the overbreadth analysis here? The Supreme Court has has talked about overbreadth sort of in general, and then it is also talked in the national what is it? National Treasury Employees Union case, which we have adopted in a lawful and when you're in these kind of like government employee scenarios that the overbreadth analysis is a little different. And so first, as I understand things, the plaintiff has the burden to show that he or she was speaking on a matter of public concern. Everybody agrees that's met here. So then the burden, in effect, in the overbreadth analysis and a public employee case shifts to you. So we said in a lawful and quoting National Treasury Employees Union to show that the interests of the potential audiences and this is a mouthful. So buckle your chin strap to show that the interests of the potential audiences and a vast group of present and future employees and a broad range of present and future expression are outweighed by that expression's necessary impact on the actual operation of the government, right? So my question is, aside from Labriola's own speech here, what's the evidence that the type of expression covered by this policy impacts the ability of the county to carry out its functions? That, under O'Loughlin, was like your burden to show. So what's the evidence? Okay, so the evidence is that after he made those two statements, right, the pedophile and the child molester statement, that it impeded the ability of the chair's office to conduct work for it was a particular period of time. Yeah, so I sort of get this, and I know your time's running clear, so I get running out. So I just want to be clear about what my question is. I understand, like, for the ordinary pickering claim, I'm with you, frankly. That's like an as-applied First Amendment challenge. But when we're in overbred land, I don't think that you can just rest on what happened in this case, the disruption that happened by virtue of Labriola's own conduct. I think you've got to kind of like broaden out the lens a little bit to say, separate and apart from Labriola, the sort of stuff that this overbroad policy, I shouldn't load the dice, that this broad policy covers, impede our ability to do our function, to do our thing. So I guess if I take a step back, we can't have employees making this type of vulgar, vile, demeaning, derogatory statements impedes the ability of the county to do its work. And that's at the 65,000 foot. And that's what happened here. And then when looking at overbred, I do believe there is a, one has to look at the facts of this particular case, right? What was said here and put up against the policy itself. But I see that my time is up. And I'll leave it at that. Thank you.  Thank you. Mr. Bumboo, you have five minutes. Let me ask you just a preparatory question. When we look at these overbred cases, and it's a very difficult area of the law, at least for me, because in so many ways, it's so different from the way we normally come at cases and adjudicate Jones versus Smith. And the plaintiff is given license to act as a quasi attorney general to address greater interest because of the importance we place on expressive freedom. But one of the things that we often say in this regard is that we can cure overbred case by case, instance by instance frequently. And that therefore we need not sometimes reach for this strong medicine. In a case like this, where at least from my perspective, you're on the losing end of the argument on pickering. Why shouldn't we wait for development with a better case where the issues can be more properly and sharply joined? Why do it here? Particularly when if you pick your way through the 10 pages of the policy, there are arguably things that are facially constitutional, at least to me. And there are arguably things here to me that look facially overbroad and unconstitutional. And I'm not sure that you have really met the kind of showing the Supreme Court has suggested you ought to be making that in the main most of the time, this is going to be a problem. Even if I limit the focal point to what Judge Newsom was asking about, where it involves speech and government employees. Why is this the case for us to reach out for this unicorn rather than simply say case by case, issue by issue where it's properly joined? If indeed I'm right, that you lose on pickering anyway. And lose clearly on pickering. And again, I'm only speaking for myself, but I'm looking for help on this because it's a troubling area of the law for me. Judge Marcus, I answer your question by reiterating the points that I made earlier, namely, well, let me backtrack a little bit. The court in O'Loughlin. I remember it well. The court in O'Loughlin certainly thought that the Palm Beach County Fire Department social media policy was the right case for it to decide on facial overbreath. So I point to that. And I think that this case is the right case to decide on facial overbreath because of the similarity of IO7-45 to the Palm Beach County Fire Department social media policy, which I briefed at length. Also, I will reiterate, the district court's overbreath analysis was erroneous. And so it should not be allowed to stand as precedent for use in other cases. And finally, Miami-Dade County employees should not have to continue working under the unconstitutional provisions of IO7-45. That is how I answer your question. I hope that it helps. Let me know if there's anything else. No, thank you very much. So Mr. Candela made the point, he made the claim that the burden was on my client to identify which provision IO7-45 Diaz was punishing him under. Well, he had just been suspended for what he wrote. So I highly doubt that would have been in his mind. Additionally, the county did not identify the specific, they did not claim to identify a specific provision under which IO7-45, sorry, they did not claim to identify the specific provision until the summary judgment papers in 2023. So over two years after Labriola was fired and almost a year after this case was filed. And so they had the opportunity during discovery to identify it and they didn't. And the fact that they did not identify the specific provision or they did not claim to identify a specific provision until that time, I think it makes, despite the fact that we're restricting our overbreath challenge to only the three specific provisions of IO7-45, awful harassment, unlawful harassment, social media policy. I think their failure to identify this really puts all of IO7-45 at stake. But again, even though we could challenge all of IO7-45, we're only challenging those three provisions. So additionally, I do wanna go back to what the unlawful harassment provision says. And it is overbroad, the fact that it is overbroad is reinforced by the fact that it prohibits, quote, electronic transmission of derogatory materials, including social media posts. That the harasser can be someone who is not an employee of the county, such as a board member, vendor, client, or customer, and that the harm need not be intentional. So that's something that I just wanted to point out. And finally, in response to opposing council's claim that my client's speech caused a sufficient amount of disruption in the office to tip the balance in the county's favor, I would leave that argument, I leave my argument to the briefs. I believe that there is nothing else I can say. I believe I've said everything that there is to be said about the county's inability to show that its efficiency interest outweighed Mr. Labriola's interest in speaking. Are there any further questions or comments from the panel? All right, thank you, council.